FILED

AUG 24 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-11-1433-HPaD |
| ) | |
| RICK H. REYNOLDS, ) | Bk. No.   09-14039 |
| ) | |
| ) | Adv. No.  09-01205 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| SANDRA BENDON, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| RICK H. REYNOLDS; JOHN M. ) | |
| CARMACK, CO-TRUSTEE OF THE ) | |
| REYNOLDS FAMILY TRUST and CO- ) | |
| TRUSTEE OF THE REYNOLDS FAMILY) | |
| TRUST-SURVIVOR'S TRUST, as ) | |
| amended; JOHN MORRIS, CO- ) | |
| TRUSTEE OF THE REYNOLDS ) | |
| FAMILY TRUST and CO-TRUSTEE ) | |
| OF THE REYNOLDS FAMILY TRUST- ) | |
| SURVIVORS TRUST, as amended, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on May 17, 2011
at Pasadena, California

Filed – August 24, 2012

_____

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith A. Jury, Bankruptcy Judge, Presiding

_____

Appearances: Jesse S. Finlayson, of Finlayson Williams
Toffer Roosevelt & Lilly LLP, argued for the Appellant.

_____

Before: HOLLOWELL, PAPPAS and DUNN, Bankruptcy Judges.

HOLLOWELL, Bankruptcy Judge:

The bankruptcy court granted the debtor's summary judgment motion, concluding that the bankruptcy estate was entitled to no more than 25% of the debtor's beneficiary interest in a spendthrift trust. The chapter 7 trustee appealed. For the reasons explained below, we AFFIRM.

## I. FACTS

In 2005, Rick Reynold's (the Debtor's) parents, Freddie Hugo Reynolds (Freddie) and Patsy R. Reynolds (Patsy), established the Reynolds Family Trust. Patsy died in November 2007. Upon her death, the Reynolds Family Trust was split into three sub-trusts: (a) the Bypass Trust; (b) the Marital Trust; and, (c) the Survivor's Trust. Freddie retained the right during his lifetime to receive all the income from each of the trusts. While the Bypass Trust and the Marital Trust (together, the Family Trust) were vested and not subject to further amendment, the Survivor's Trust (Survivor's Trust) was amended from time to time by Freddie. He died on March 3, 2009.

Once the Debtor survived Freddie by thirty days, he was entitled to receive distributions from the Family Trust and the Survivor's Trust. From the Family Trust, he was entitled to $250,000. Additionally, the Debtor was a one-third beneficiary of the Survivor's Trust, along with his sisters, entitled to receive $100,000 per year for ten years. The assets in the Survivor's Trust are interests of undeveloped real property, which do not generate income. Thus, the distributions to the Debtor are expected to be paid from trust principal. The terms

2

of the last amended Survivor's Trust provided that after the Debtor survived Freddy for ten years, he would receive a final distribution of one-third of the remaining principal. Although the exact amount of the Debtor's interest in the Survivor's Trust is unknown, the bankruptcy trustee believes it could be as much as several million dollars.

The Family Trust and the Survivor's Trust are "spendthrift" trusts, containing provisions that "[n]o interest in the income or principal of any trust created under this instrument shall be voluntarily or involuntarily anticipated, assigned, encumbered, or subjected to creditor's [sic] claim or legal process before actual receipt by the beneficiary."

The Debtor filed a voluntary chapter 7 petition on March 4, 2009.[1] Sandra L. Bendon was appointed the chapter 7 bankruptcy trustee (the Trustee). On April 28, 2009, John Carmack, sole trustee of the Family Trust and co-trustee, with John Morris, of the Survivor's Trust, filed an adversary proceeding seeking a declaratory judgment determining whether and to what extent the bankruptcy estate held an interest in the Family Trust and the Survivor's Trust.

On January 14, 2010, the Debtor filed a motion for partial summary judgment (MSJ). The Debtor sought a partial summary adjudication and judicial declaration that pursuant to California Probate Code §§ 15300 et seq. (referred to herein as the Probate

---

[1] The Debtor was unaware of the trusts or that he was a beneficiary of the Trust. Thus, the Debtor did not list his interest in the Trust on his bankruptcy schedules. On August 6, 2009, the Debtor amended the bankruptcy schedules to list his vested interest in the Survivor's Trust.

Code or by the sections 15300-15307), particularly 15306.5, a maximum 25% of a beneficiary's interest in a spendthrift trust is property of a bankruptcy estate. Therefore, the Debtor argued that the estate was entitled to reach no more than 25% of the Debtor's interest in the Family Trust and the Survivor's Trust.

The Trustee opposed the MSJ. The Trustee acknowledged that Probate Code 15306.5 capped a judgment creditor's[2] recovery at 25% of a beneficiary's interest in a spendthrift trust. However, she argued that distributions of <u>principal</u> amounts payable to a beneficiary under a trust, even if the trust contains a spendthrift provision, are not protected under Probate Code 15301(b). Thus, the Trustee asserted that because the distributions from the Family Trust and the Survivor's Trust were expected to be made from principal, the estate could potentially reach all of the Debtor's interests. Alternatively, the Trustee asserted that, under Probate Code 15307, the estate could reach the Debtor's interest in all amounts from the Family Trust and the Survivor's Trust over and above what he required for his education and support.

At the hearing on the MSJ, the bankruptcy court disagreed with the Trustee's interpretation of the Probate Code. It

---

[2] A bankruptcy trustee may not "step into the shoes" of individual creditors to seize a spendthrift trust's assets. <u>Garrett v. Finley (In re Finley)</u>, 286 B.R. 163, 166 (Bankr. W.D. Wash. 2002). However, a bankruptcy trustee is considered a hypothetical lien creditor and can recover assets of the estate for the benefit of general creditors under 11 U.S.C. § 544(a)(1). <u>Cutter v. Seror (In re Cutter)</u>, 398 B.R. 6, 21 (9th Cir. BAP 2008); <u>Neuton v. Danning (In re Neuton)</u>, 922 F.2d 1379, 1383 (9th Cir. 1990).

4

interpreted the Probate Code as allowing the estate a maximum of 25% of a debtor's interest in a spendthrift trust, less any amount the debtor needed for his support or support of his dependents. The bankruptcy court entered its order granting the MSJ on June 6, 2011. A final judgment was entered on July 29, 2011. The Trustee timely appealed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[3]

## III.  ISSUE

Did the bankruptcy court err in determining that the estate was entitled to a maximum of 25% of the Debtor's interests in the Family Trust and the Survivor's Trust?

## IV.  STANDARD OF REVIEW

We review orders granting summary judgment de novo. Bamonte v. City of Mesa, 598 F.3d 1217, 1220 (9th Cir. 2010). We review questions of California statutory construction de novo. Ehrenberg v. S. Cal. Permanente Med. Group (In re Moses), 167

---

[3] On April 11, 2012, the Panel issued an order requesting the Trustee to address whether the appeal was moot since it was unclear whether the proceeds from 25% of the Debtor's interest in the Family Trust and Survivor's Trust were adequate to satisfy all allowed claims. The Trustee filed a response on April 18, 2012, stating that she estimates she needs $600,000 to pay allowed claims in full. The 25% limitation on the Debtor's interests would give the Trustee $62,500 and $25,000/year for 10 years, or $312,500 plus whatever unknown amount would be paid out after 10 years. If we were to reverse the bankruptcy court, the Trustee could potentially satisfy creditor claims in full. Because we could provide the Trustee effective relief, the appeal is not moot and we have jurisdiction to reach its merits.

5

F.3d 470, 473 (9th Cir. 1999). Whether property is included in a bankruptcy estate is a question of law reviewed de novo. Birdsell v. Coumbe (In re Coumbe), 304 B.R. 378, 381 (9th Cir. BAP 2003); Cisneros v. Kim (In re Kim), 257 B.R. 680, 684 (9th Cir. BAP 2000), aff'd, 35 Fed. Appx. 592 (9th Cir. 2002); see also Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

## V. DISCUSSION

Summary judgment may be granted when the record shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)(made applicable by Rule 7056). There is no issue as to any material facts in this case, therefore, we address the legal question of what portion of the Debtor's beneficial interests in the Family Trust and the Survivor's Trust may be reached by the Trustee.

## A. The Bankruptcy Estate

The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, property containing "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law" is excluded from the estate. 11 U.S.C. § 541(c)(2); In re Cutter, 398 B.R. at 19; In re Kim, 257 B.R. at 688. There is no dispute in this case that the Family Trust and the Survivor's Trust were spendthrift trusts, which restricted the transfer of the Debtor's interests.

California law recognizes the validity of spendthrift

trusts. In re Moses, 167 F.3d at 473; In re Neuton, 922 F.2d at 1383. The validity of a spendthrift provision is predicated on the consideration that a person is free to make any desired disposition of his property. Crocker-Citizens Nat'l Bank v. Johnston (In re Estate of Johnston), 252 Cal. App. 2d 923, 925-26 (Cal. Ct. App. 1967). Nevertheless, California has imposed qualifications and restrictions on spendthrift trusts, which are set forth in the Probate Code.

The Trustee asserts that the Probate Code allows her to reach the Debtor's full interest in the Family Trust and the Survivor's Trust in order to satisfy the claims of the estate's creditors. Therefore, she argues that the bankruptcy court erred in its conclusion that the Probate Code limited the estate to 25% of the Debtor's interests. Our decision therefore depends on the construction and interpretation of the Probate Code.

**B. Principles Of Statutory Construction**

"When presented with a question of statutory construction, our primary task is to ascertain legislative intent to effect the purpose of the statute." Ventura Cnty. Dep't Of Child Support Servs. v. Brown, 117 Cal. App. 4th 144, 149-50 (Cal. Ct. App. 2004). We must ascertain the legislative intent starting with the language of the statute itself. Young v. McCoy, 147 Cal. App. 4th 1078, 1083 (Cal. Ct. App. 2007). If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. Doner-Griswold v. See (Estate of Griswold), 25 Cal. 4th 904, 911 (2001). Only if the statute is ambiguous do we consult extrinsic sources such as legislative history. Id.

7

In reading a statute, we keep in mind that interpretations that render any part of a statute superfluous are to be avoided. Sonoma Cnty. Human Servs. Dep't v. J.H. (In re S.H.), 197 Cal. App. 4th 1542, 1552 (Cal. Ct. App. 2011); Young, 147 Cal. App. 4th at 1084. Moreover, the various parts of a statute must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole in order to determine the scope and purpose of the provision. People v. Mendoza, 23 Cal. 4th 896, 907-08 (2000). "We must promote, rather than defeat, the general purpose of the statute." Ventura Cnty., 117 Cal. App. 4th at 150. Furthermore, we "must avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend." Mendoza, 23 Cal. 4th at 908.

**C.    The Probate Code**

The Probate Code sets forth the rules regarding restrictions on voluntary and involuntary transfers. It was substantially revised by the California Legislature in 1986 to improve and coordinate the law relating to spendthrift trusts. Ventura Cnty., 117 Cal. App. 4th at 150-51. "There were two objectives: 1) to reduce the ability of a general creditor to reach a beneficiary's interest in a trust; and 2) to give greater rights to support creditors." Id. at 151.

The Probate Code first sets out California's recognition that a restraint on the transfer of trust income is valid. Cal. Prob. Code § 15300. If so restrained, the beneficiary's interest in trust income "may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary."

8

*Id.* Probate Code 15301 provides identical protections to the principal of spendthrift trusts. Cal. Prob. Code § 15301(a). Thus, in California, a beneficiary's interest in the income and principal of a spendthrift trust is protected from the claims of creditors as long as the income and/or principal remains in the trust. Once the income or principal of a spendthrift trust is distributed to a beneficiary, however, it can be reached by creditors. Cal. Prob. Code §§ 15300, 15301.

That said, there are stated exceptions that allow certain creditors to reach trust income or principal that is payable, but not yet paid, to a beneficiary. The exceptions are listed in 15304-15307. Cal. Prob. Code § 15300, 15301.

The Trustee asserts that each exception is independent and provides alternate means for a creditor to seek the maximum amount of a beneficiary's interest in order to satisfy its claim. She contends the first exception is actually contained in 15301(b) and allows a creditor to reach all principal amounts that are due and payable to the beneficiary in order to satisfy a money judgment. The Trustee argues that "[t]here are no limitations on creditors' rights under section 15301(b)." We disagree.

### 1. Probate Code 15301(b)

Probate Code 15301 states:

(a) Except as provided in subdivision (b) and in Sections 15304 to 15307, inclusive, if the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest in principal may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.

(b) After an amount of principal has become due and

9

> payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court may make an order directing the trustee to satisfy the money judgment out of that principal amount. The court in its discretion may issue an order directing the trustee to satisfy all or part of the judgment out of that principal amount.

Cal. Prob. Code § 15301 (emphasis added).

Probate Code 15301(a) references exceptions — those listed in 15301(b) and in 15304-15307 — to the general rule that trust principal enjoys spendthrift protection. If, as the Trustee contends, 15301(b) allows a creditor the ability to satisfy its judgment in full from the principal amount that has become due and payable to the beneficiary, then there is little reason for 15301 to reference any of the other exceptions in 15304-15307, particularly because the other exceptions also provide that a creditor can reach trust principal that is "due and payable." Any of the other exceptions would be inapplicable and superfluous if 15301(b), by itself, provided a creditor the means to satisfy her judgment in full. Moreover, reading 15301(b) to mean that a creditor can reach the entire principal amount of a trust effectively eviscerates the spendthrift protection recognized by 15301(a).

Accordingly, a fair reading of 15301(b) is that it sets out the procedure that a creditor must follow to satisfy her claim from the principal of a spendthrift trust once it is payable but not yet distributed to the beneficiary. First, she must file a petition with the court under Cal. Civ. Proc. Code (C.C.P.) § 709.010 (procedure for enforcement of a money judgment against interest in trust). DeMille v. Ramsay, 207 Cal. App. 3d 116,

10

126-27 (Cal. App. 1989). The court then has the discretion to order the trustee to satisfy the claim to the extent allowable under 15304-15307. Id.

C.C.P. § 709.010 emphasizes that the court's discretion to order satisfaction of a judgment does not affect the limitations on the enforcement of a debtor's interest in a trust under the Probate Code. C.C.P. § 709.010(c). Thus, Probate Code 15304-15307 "governs the rights of transferees and creditors of the beneficiary of a trust to reach the beneficial interest in the trust." See Official Law Commission Comments, C.C.P. § 709.010(c). Consequently, whether and to what extent the Trustee may reach the Debtor's beneficial interests in the Family Trust and the Survivor's Trust is determined by the application of 15304-15307, not 15301(b).

## 2. **Probate Code 15304-15306**

The exceptions contained in 15304-15307 are important in understanding the statutory framework and general purpose of the Probate Code because they reflect a policy recognition that certain creditors should have greater rights to a beneficiary's interest in order to satisfy their claims. To that end, 15305 provides special rights for creditors who hold claims for child or spousal support. Support creditors are considered "preferred" creditors "entitled to rights unavailable to a general creditor." Ventura Cnty., 117 Cal. App. 4th at 151. A support creditor may reach a beneficiary's interest in a spendthrift trust and be paid from payments (either from income or principal) "as they become due and payable, presently or in the future" in an amount that the court determines is equitable and reasonable. Cal. Prob.

11

§ 15305(b). A court may even overcome a trustee's discretion to make or withhold payments to the beneficiary if the trustee acts dishonestly or with an improper motive.

The same is true for payment of restitution judgments. Cal. Prob. Code § 15305.5; Young, 147 Cal. App. 4th at 1084-85. Similarly, if the beneficiary is liable for reimbursement to the state for public support benefits, the court may direct the trustee to satisfy all or part of the liability out of payments (from trust income or principal) due and payable, presently or in the future. Cal. Prob. Code 15306.

These exceptions reflect a clear policy position, which permits particularly identified creditors to reach a beneficiary's interest in a spendthrift trust with little restriction (the only limiting factor depends on what the court finds to be reasonable and equitable). Consequently, the Trustee's argument that any creditor should similarly be able to satisfy its claim from trust principal under 15301(b) is unavailing.

### 3.    Probate Code 15306.5 and 15307

Probate Code 15306.5 and 15307 address two other exceptions to the anti-alienation provisions of a spendthrift trust, which are central to this appeal. Probate Code 15306.5 allows a money judgment creditor to satisfy its judgment out of the payments to which the beneficiary is entitled under the spendthrift trust "so long as the payment does not 'exceed[ ] 25% of the payment that otherwise would be made to . . . the beneficiary.'" In re Neuton, 922 F.2d at 1383, citing Cal. Prob. Code § 15306.5(b). However, "any amount that the court determines is necessary for

12

the support of the beneficiary and all the persons the beneficiary is required to support" is exempt from the payments to which a creditor would be entitled under 15306.5. Cal. Prob. Code § 15306.5(c).

The Ninth Circuit, in In re Neuton, held that because a bankruptcy trustee is a hypothetical judgment creditor under 11 U.S.C. § 544(a)(1), a debtor/beneficiary's bankruptcy estate was entitled to an interest in one-fourth of the payments due to the beneficiary. Id. at 1383. "The relevance of § 15306.5 is that it removes 25% of the debtor's interest in the trust from traditional spendthrift status." Id. Even though a bankruptcy trustee may reach 25% of what the debtor/beneficiary is entitled to receive, that amount may be reduced by whatever amount the court determines is necessary for the beneficiary's (and his dependents') support. Cal. Prob. Code § 15306.5(c); In re Neuton, 922 F.2d at 1384.

The Trustee agrees that 25% of the Debtor's interest in the Family Trust and the Survivor's Trust constitutes property of the bankruptcy estate. Nevertheless, she argues that the estate's interest is not limited to what it can reach under 15306.5. The Trustee asserts that the estate may alternatively use 15307 to reach any amount to which the beneficiary is entitled that is in excess of what the beneficiary needs for his own education and support.[4]

----

[4] The difference here would be that under 15306.5, the Trustee would be limited to 25% of the $250,000 distribution from the Family Trust and 25% of each 100,000 distribution from the Survivor's Trust, or $312,500 over 10 years (not considering the (continued...)

13

Probate Code 15307 is titled "Income in excess of amount for education and support; application to creditors' claim." It reads:

> Notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 or 15301, any amount to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined to pay to the beneficiary in excess of the amount that is or will be necessary for the education and support of the beneficiary may be applied to the satisfaction of a money judgment against the beneficiary. Upon the judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the beneficiary's interest in the trust.

Cal. Prob. Code § 15307.

This section lacks clarity. For instance, its title suggests that it provides creditors the ability to reach trust income. But the text of the statute states that it applies notwithstanding restraints on both income and principal by its reference to 15300 or 15301. Thus, the language of 15307 seems to allow a money judgment creditor to satisfy its claim from any amount, either income or principal, that is in excess of what the beneficiary needs for his own education and support.

However, that reading is inconsistent with 15306.5, which limits a money judgment creditor to 25% of the beneficiary's interest in a spendthrift trust. Indeed, if

[4](...continued) unknown potentially large final distribution from the Survivor's Trust). Under the Trustee's interpretation of 15307, she could reach $1,250,000 (10 x 100,000 + 250,000) less any amounts necessary for the Debtor's education and support.

14

the Probate Code sections are separate avenues for collection, 15306.5 would make no sense: Why would a judgment creditor ever choose to satisfy its claim under 15306.5, which is limited not just by the 25% cap on the beneficiary's interest but by the needs of the debtor <u>and</u> his or her dependents, when 15307 is only limited by the debtor's <u>own</u> educational and support needs?

The language of a statute should not be given a literal meaning if doing so would result in absurd consequences. <u>People v. Broussard</u>, 5 Cal. 4th 1067, 1071 (1993) (internal citation omitted); <u>People v. Mendoza</u>, 23 Cal. 4th at 912, n.7. In such circumstances, the "intent prevails over the letter" and the statute is read to conform to the statute's intention. <u>Broussard</u>, 5 Cal. 4th at 1071-72. Interpreting 15307 as providing the Trustee the ability to satisfy creditor's claims with all trust income and principal over what the Debtor requires for his education and support would result in absurd consequences. As noted, it would render 15306.5(a)-(f) meaningless. It also would allow a general creditor to satisfy its claim to nearly the same extent as a preferred creditor.

The Trustee complains that the bankruptcy court's interpretation —- that 15306.5 caps the amount of trust income or principal that a judgment creditor may reach — makes 15307 superfluous. But the Trustee's interpretation renders 15306.5 superfluous. Therefore, because 15307 is capable of differing interpretations, it is ambiguous, and we may review legislative history or other extrinsic sources

to aid in our interpretation.

The official Law Revision Commission Comments to 15307 state that "[w]hile sections 15305 and 15306 permit only preferred creditors to reach the beneficiary's interest in the trust, Section 15307 permits an ordinary creditor to reach income under limited circumstances." (Emphasis added). Despite the language in 15307, "notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 or 15301," which refers to both trust income and principal, it is more consistent with legislative intent to read 15307 as limiting a non-preferred creditor to only income payments that are in excess of what is necessary for the beneficiary's support.

This interpretation is bolstered by earlier versions of the Probate Code. In Canfield v. Sec.-First Nat'l Bank of Los Angeles, 13 Cal. 2d 1, 11 (1939), the court explained that spendthrift trusts were initially recognized under California law without limitation. Id. In 1872, California law imposed a singular limitation on spendthrift trusts: where a trust was created to receive the rents and profits of real property, the surplus of the rents and profits (i.e., the income from the real property) over what was necessary for the education and support of the beneficiary was liable to claims of creditors. Id. at 12. The Probate Code's immediate predecessor, Cal. Civ. Code § 859, followed the same principle. It permitted creditors to reach a beneficiary's income distributions except for amounts necessary for the beneficiary's education and support. Id.;

16

_Estate of Johnston_, 252 Cal. App. 2d at 926.

The Probate Code replaced Cal. Civ. Code § 859 in 1986. Prior to 1986, even though there was a recognition that certain creditors, such as support creditors, should be preferred creditors, they could not reach a beneficiary's interest in a spendthrift trust without a determination that there was income in excess of the amount needed by the beneficiary for his support and education. _Id._ at 928. The Probate Code codified public policy concerns and provided certain creditors the ability to reach a greater amount of a beneficiary's interest in a spendthrift trust than general creditors and coordinated a "patchwork" of existing law on spendthrift trusts. _Ventura Cnty._, 117 Cal. App. 4th at 151. Based on this history, Probate Code 15307 appears to be a vestige of the root limitation on a creditor's reach solely to income distributions.

The more plausible reading of 15307, which is consistent with the legislative intent, is that it restricts the reach of a non-preferred creditor to income payments, notwithstanding its reference to 15301. As with the Trustee's interpretation of 15301(b), an interpretation that reads 15307 as an avenue for money judgment creditors to satisfy claims from income and principal with the only restriction being the educational and support needs of the debtor would elevate "ordinary creditors" to "preferred" status. It would therefore render sections of the Probate Code meaningless and superfluous and would not promote the purpose of the Probate Code.

17

We have found no case law that reconciles 15306.5 and 15307. In re Neuton held that a Trustee was entitled to reach, as property of a bankruptcy estate, no more than 25% of the debtor's beneficiary interest in a spendthrift trust. But the court in Neuton did not discuss the applicability of 15307. Indeed, it never mentioned 15307 in its analysis of what may be included in the bankruptcy estate. Because the Ninth Circuit did not examine the applicability of 15307, Neuton does not assist us in determining what general creditors can reach under 15307 or whether the Trustee may assert a right to distributions under either 15306.5 or 15307 or both.

The Trustee also argued that she was entitled to use 15307 to seek any deficiency claims not paid from the 25% cap of 15306.5. However, here, because the Debtor's distributions are only from principal and not income, under our interpretation of the Probate Code, 15307 does not apply in this case. Consequently, the Trustee may not receive more than 25% of the Debtor's interests in the Family Trust and the Survivor's Trust.

## VI.  CONCLUSION

For the foregoing reasons, we conclude that the Trustee is entitled to reach only up to 25% of the Debtor's interests in the Family Trust and the Survivor's Trust. We AFFIRM.

18

PAPPAS, Bankruptcy Judge, Dissenting:

I reluctantly decline to join my colleagues' opinion because I do not believe the California legislature intended that a debtor, without exception, should have access to potentially large distributions of cash from a trust not needed for his support or education in preference to the legitimate claims of his creditors.

The California Probate Code provisions dealing with the rights of a spendthrift trust beneficiary's creditor to access income and principal distributions are opaque. However, in this case, I do not think those statutes prevent the Trustee from asserting a right to more than 25% of the distributions to be made to the Debtor. In coming to this conclusion, and in contrast to the majority, I would reconcile the Probate Code as follows.

Sections 15300 and 15301(a) generally validate the inclusion of "spendthrift" provisions to protect trust income and principal from the reach of a beneficiary's creditors while the assets remain in the trust. As the statutes note, there are the several exceptions to the general rule authorizing spendthrift trusts, which are codified in section 15301(b) and sections 15304 through 15307.

For example, section 15301(b) allows a California court, upon petition of a beneficiary's judgment creditor (or in this case, the beneficiary's bankruptcy trustee), in the exercise of its discretion, to order the trustee of the

19

trust to pay an amount of the principal of the trust, which has become "due and payable" to the beneficiary, to the creditor. Under sections 15305 and 15305.5, creditors holding support or restitution claims are, with an appropriate court order, not restricted by the spendthrift restrictions of a trust, and may reach either present or future distributions to a debtor of trust income or principal.

The Probate Code contains other relevant provisions concerning a court's power to order that trust distributions be made to a beneficiary's creditors. For example, section 15306.5, like section 15301(b), allows a court, upon a creditor's petition, to order the trustee to pay a creditor instead of the beneficiary. But unlike section 15301(b), a court order under this section of the Probate Code may impact amounts of <u>both</u> principal and income that "the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary."

However, under section 15306.5(b), the court's authority under subsection (a) is limited, and a beneficiary's rights are protected. This statute provides, as a general rule, that the court may not order more than 25% of the payment that otherwise would go to the beneficiary be paid to the creditor. Section 15306(c) is another beneficiary protection. It prohibits any payment to a creditor of amounts necessary for the support of the beneficiary and his or her dependents. In other words, via

20

this provision, an impecunious debtor may be able to persuade a court to prevent a creditor from reaching even the 25% of a distribution generally allowed under section 15306.5(b).

Finally, section 15307 plays a critical role in protecting creditors' rights in this context. It allows a court, "[n]otwithstanding" the general validity of spendthrift provisions allowed in sections "15300 or 15301," upon petition of a judgment creditor, to order payment to the judgment creditor from "any amount to which the beneficiary is entitled under the trust or that the trustee, in the exercise of trustee's discretion, has determined to pay the beneficiary" of amounts "in excess of the amount that is or will be necessary for the education and support of the beneficiary . . . ."

Viewed collectively, to me, the California statutory scheme attempts to balance the rights of a beneficiary's creditors, the trustor, and a beneficiary's needs for financial support. Under the Probate Code, a spendthrift trust may be created by a trustor to protect the payments to which the beneficiary may be entitled from the trust from the reach of the beneficiary's creditors. While this is an obviously valid legislative goal, absent exceptions to this general rule, the use of such trusts could prove abusive where beneficiaries with unpaid creditors have no legitimate need for trust distributions. To balance the scales, the California legislature allows creditors, in some cases, to reach some, or perhaps even all, of those distributions.

For most creditors (i.e., not those holding claims for support or restitution creditors), that amount will be 25% of the distribution. However, the statutes allow either a creditor or the beneficiary to petition the state court and to perhaps persuade it, in the exercise of its discretion, to either increase or decrease the amount going to the creditor depending upon the beneficiary's financial needs.

Interpreting the statutes in this fashion makes good sense. Spendthrift trusts are generally allowed, but they are subject to the exercise of judicial discretion to prevent them from being used to inequitably shield financially independent beneficiaries from the legitimate claims of creditors. Putting this policy in context, why would the California legislature favor a testator's goal of providing cash payments to a beneficiary over the rights of a beneficiary's creditors when the facts show that the beneficiary does not need the money? In particular, when according to the trust instrument, or in the trustee's discretion, it is time to distribute principal to a beneficiary, why insulate those distributions from the claims of creditors of an affluent beneficiary?

Unlike my colleagues, I do not believe this reading of section 15307 renders section 15306.5 superfluous. On the other hand, as my colleagues concede, the majority's interpretation does indeed render section 15307 surplusage unless we take the extraordinary step of judicially limiting section 15307's application solely to trust income distributions. As the majority acknowledges, to reach their

22

result, they must ignore the express language of section 15307 which makes it applicable "[n]otwithstanding a restraint under . . . 15300 [income] or 15301 [principal]." (Emphasis added). Doing so violates many of the same canons of statutory construction upon which the majority relies to support its interpretation.

Because I decline to believe that the California legislature intended us to read the Probate Code in a manner implementing a bad, perhaps even an absurd policy, I respectfully dissent. We should vacate the bankruptcy court's order limiting the right of the Trustee to 25% of the trust distribution, and remand for consideration by the bankruptcy court of what amounts are truly necessary for the education and support of the debtor as required by section 15307.